UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DEC -7 PM 4:19
DISTRICT
INDIANA
BRIGGS

| | |
|---|---|
| PETER A. KRAFT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERIFONE HOLDINGS, INC., DOUGLAS G. BERGERON, and BARRY ZWARENSTEIN,<br><br>Defendants. | **CLASS ACTON COMPLAINT FOR VIOLATIONS OF SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED**<br><br>1:07-cv-1588-DFH-WTL |

**CLASS ACTION COMPLAINT**

Plaintiff Peter A. Kraft, on behalf of himself and all others similarly situated, by counsel, for his Class Action Complaint against Defendants VeriFone Holdings, Inc., Douglas G. Bergeron, and Barry Zwarenstein, alleges as follows:

1. This is a federal class action on behalf of purchasers of the securities of VeriFone Holdings, Inc. ("VeriFone" or the "Company") between March 1, 2007 and November 20, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. As alleged herein, in connection with the sale of securities, defendants published a series of materially false and misleading statements which defendants knew, deliberately disregarded and/or negligently disregarded were false and materially misleading at the time of such publication, and/or omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading at that time.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act. The claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the Securities Commission ("SEC").

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b), §1337.

5. In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities market.

## PARTIES

6. Plaintiff Peter A. Kraft, as set forth in the accompanying certification, incorporated by reference herein, purchased VeriFone common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7. Defendant VeriFone is a Delaware corporation with its principal place of business located at 2099 Gateway Place, Suite 600, San Jose, California. VeriFone describes itself as "the global leader in secure electronic payment technologies."

8. Defendant Douglas G. Bergeron ("Bergeron") was, during the Class Period, Chairman and Chief Executive Officer of the Company. During the Class Period, defendant Bergeron signed the Company's SEC filings.

9. Defendant Barry Zwarenstein ("Zwarenstein") was, during the Class Period, Executive Vice President and Chief Financial Officer of the Company. During the Class Period, defendant Zwarenstein signed the Company's SEC filings.

10. Bergeron and Zwarenstein are referred to herein as "Individual Defendants."

11. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

12. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of VeriFone, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or deliberately disregarded, that the false and misleading statements

were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

13. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or deliberately and/or negligently disregarded, the misstatements contained herein and omissions there from, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with VeriFone, each of the Individual Defendants had access to the adverse undisclosed information about VeriFone's business prospects and financial condition and performance as particularized herein and knew (or deliberately and/or negligently disregarded) that these adverse facts rendered the positive representations made by or about VeriFone and its business issued or adopted by the Company materially false and misleading.

15. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein, and is therefore primarily liable for the representations contained therein.

16. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of VeriFone common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding VeriFone's business, operations, management and the intrinsic value of VeriFone common stock; (ii) enabled the defendants to sell over $62.9 million worth of Company stock to investors during the Class Period; and (iii) caused plaintiff and other members of the Class to purchase VeriFone securities at artificially inflated prices.

PLAINTIFF'S CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of VeriFone between March 1,2007 and November 30,2007, inclusive (the "Class") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate

families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

18. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, VeriFone common shares were actively traded on the New York Stock Exchange. As of January 31, 2007, the Company had over 82 million shares issued and outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by VeriFone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

19. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

20. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

21. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and financial results of VeriFone; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

## SUBSTANTIVE ALLEGATIONS

23. On March 1, 2007, the inception of the Class Period, VeriFone published a release on *Business Wire* in which it announced its financial results for the first fiscal quarter ended January 31, 2007. The press release stated, in part, the following:

> VeriFone Reports First Quarter Fiscal 2007 Results
>
> Revenues of $217 million Grew 61% due to Lipman Acquisition and Strong International Performance
>
> Record EBITDA, as adjusted, margins of 25.7%
>
> EPS, ad adjusted, increases 54% to 37 cents
>
> SAN JOSE, Calif.- - (BUSINESS WIRE) - - March 1, 2007 - - VeriFone Holding, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended in January 31, 2007. The Company's first quarter results reflect the November 1, 2006, acquisition of Lipman and, because of the integration of Lipman's products and distribution channels as well as the lack of comparable quarter ends of VeriFone and Lipman, are compared to preacquisition results of prior fiscal periods.
>
> Net revenues, for the three months ended January 31, 2007, were $216.6 million, 61% higher than the net revenues of $134.6 million for the comparable period of 2006. The record revenues were driven by the Lipman acquisition and a strong performance internationally.
>
> Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, were 47.1 %, for the three months ended January 31, 2007, compared to 45.6% for the comparable period of 2006. GAAP gross margins for the three months ended January 31, 2007, were 37.6%, compared to

> 44.3% for the three months ended January 31, 2006, as a result of increased amortization of purchased technology assets and the step-up in inventory.
>
> EBITDA, as adjusted, margins for the three months ended January 31, 2007, expanded for the tenth consecutive quarter and reached a record level of 25.7%, compared to the 21.0% recorded in the three months ended January 31, 2006.
>
> GAAP EPS for the three months ended January 31, 2007, was a loss of ($0.01) per diluted share, compared to $0.20 per diluted share, for the comparable period of fiscal 2006, due to acquisition related charges and a higher GAAP tax rate. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended January 31, 2007, increased 54% to $0.37 per diluted share, compared to $0.24 per diluted share, for the three months ended January 31, 2006.

24. On March 12, 2007, defendants also filed with the SEC the Company's financial results for the quarter ended January 31, 2007 pursuant to Form 10-QA, signed by defendants Bergeron and Zwarenstein ("lQ07 Form 10-QA"). The 1Q07 Form 10-QA contained many of the same materially false and misleading statements defendants had made previously relating to the financial and operational performance of the Company. In addition, the 1Q07 Form 10-QA stated, in part, the following:

> *Unaudited Interim Financial Information*
>
> The accompanying consolidated balance sheet as of January 31, 2007 and the consolidated statements of operations and cash flows for the three months ended January 31, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S-x. In the opinion of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of January 31, 2007 and its results of operations and cash flows for the three months ended January 31, 2007 and 2006.
>
> * * *
>
> *Inventories*

Inventories are stated at the lower of standard cost or market. Standard costs 22 approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management's estimates.

* * *

*Segment Information*

The Company is primarily structured in a geographic manner. The Company's Chief Executive Officer has been identified as the Chief Operating Decision Maker ("CODM") as defined by SFAS No. 131, *"Disclosures About Segments of an Enterprise and Related Information"*. The CODM reviews consolidated financial information on revenues and gross profit percentage for System Solutions and Services. The CODM also reviews operating expenses, certain of which are allocated to the Company's two segments described below.

The Company operates in two business segments: 1) North America and 2) International. The Company defines North America as the United States and Canada, and International as the countries in which it makes sales outside the United States and Canada.

Net revenues and operating income of each business segment reflect net revenues generated within the segment, standard cost of System Solutions net revenues, actual cost of Services net revenues and expenses that directly benefit only that segment. Corporate revenues and operating income reflect amortization of intangible assets, stock-based compensation, in-process research and development expense, and amortization of the step-up in the fair value of inventories, equipment and improvements and deferred revenue resulting from acquisitions. Corporate income also reflects the difference between the actual and standard cost of System Solutions net revenues and shared operating costs that benefit both segments, predominately research and development expenses and centralized supply chain management.

25. The 1Q07 Form 10-QA also contained a certification submitted pursuant to Section 906 of The Sarbanes-Oxley Act Of 2002, signed by defendants Bergeron and Zwarenstein, respectively, which certified the veracity of the Company's financial statements, as follows:

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report.

26. On May 29, 2007, VeriFone published a release on *Business Wire* in which it announced its financial results for the second fiscal quarter ended April 30, 2007. This press release stated, in part, the following:

**VeriFone Reports Second Quarter Fiscal 2007 Results**

Revenues of $217 Million Grew 53% Due to Lipman Acquisition and Resurgent North American Growth

Record EBITDA, as Adjusted, Margins of 26.3%

EPS, as Adjusted, Increases 50% to 39 Cents

SAN JOSE, Calif.--(BUSINESS WIRE)--May 29, 2007--VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended April 30, 2007.

Net revenues, for the three months ended April 30, 2007, were $217.2 million, 53% higher than the net revenues of $142.2 million for the comparable period of 2006. VeriFone's International business increased 97% and VeriFone's North America business increased 19%. The significant increase in sales was driven largely by the acquisition of Lipman, which closed November 1, 2006.

* * *

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.1%, for the three months ended April 30, 2007, compared to 45.7% for the comparable period of 2006. GAAP gross margins for the three months ended April 30, 2007, were 41.5%, compared to 44.6% for the three months ended April 30, 2006, as a result of increased amortization of purchased technology assets, the step-up in inventory and stock based compensation.

* * *

> EBITDA, as adjusted, margins for the three months ended April 30, 2007, expanded for the eleventh consecutive quarter and reached a record level of 26.3%, compared to the 21.6% recorded in the three months ended April 30, 2006.
>
> GAAP EPS for the three months ended April 30, 2007, was $0.06 per diluted share, compared to $0.22 per diluted share, for the comparable period of fiscal 2006, due to acquisition related non-cash charges, higher stock-based compensation expense primarily related to the Lipman acquisition and to a significantly higher GAAP tax rate driven by an increase in the valuation allowance related to Lipman. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended April 30, 2007, increased 50% to $0.39 per diluted share, compared to $0.26 per diluted share, for the three months ended April 30, 2006.

27. On May 31, 2007, defendants filed with the SEC the Company's financial results for the quarter ended April 30, 2007 pursuant to Form 10-Q, signed by defendants Bergeron and Zwarenstein ("2Q07 Form 10-Q"). The 2Q07 Form 10-Q contained many of the same materially false and misleading statements as defendants had made previously relating to the financial and operational performance of the Company. The 2Q07 Form 10-Q contained certifications by defendants Bergeron and Zwarenstein respectively, each of which was virtually identical to those filed in the previous quarter and reproduced above. In addition, the 2Q07 Form 10-Q stated, in part, the following:

> *Unaudited Interim Financial Information*
>
> The accompanying consolidated balance sheet as of April 30, 2007 and the consolidated statements of operations for the three and six months ended April 30, 2007 and 2006 and consolidated statements of cash flows for the six months ended April 30, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S-X. In the opllDon of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial

statements and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of April 30, 2007 and its results of operations for the three and six months ended April 30, 2007 and 2006, and cash flows for the six months ended April 30, 2007 and 2006.

* * *

*Inventories*

Inventories are stated at the lower of standard cost or market. Standard costs approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management's estimates.

* * *

*Segment Information*

The Company is primarily structured in a geographic manner. The Company's Chief Executive Officer has been identified as the Chief Operating Decision Maker ("CODM") as defined by SFAS No. 131, *"Disclosures About Segments of an Enterprise and Related Information"*. The CODM reviews consolidated financial information on revenues and gross profit percentage for System Solutions and Services. The CODM also reviews operating expenses, certain of which are allocated to the Company's two segments described below.

The Company operates in two business segments: 1) North America and 2) International. The Company defines North America as the United States and Canada, and International as the countries in which it makes sales outside the United States and Canada.

Net revenues and operating income of each business segment reflect net revenues generated within the segment, standard cost of System Solutions net revenues, actual cost of Services net revenues and expenses that directly benefit only that segment. Corporate revenues and operating income reflect amortization of intangible assets, stock-based compensation, in-process research and development expense, and amortization of the step-up in the fair value of inventories, equipment and improvements and deferred revenue resulting from acquisitions. Corporate income also reflects the difference between the actual and standard cost of System Solutions net revenues and shared operating costs that benefit both segments, predominately research and development expenses and centralized supply chain management.

28. On September 6, 2007, VeriFone published a release on *Business Wire* which announced its financial results for the third fiscal quarter ended July 31, 2007. This press release stated, in part, the following:

**VeriFone Reports Third Quarter Fiscal 2007 Results**

Record Revenues of $232 million

Record EBITDA, as adjusted, margins of 27.3%

Record EPS, as adjusted, of 42 cents, grew 50%

Record Operating Cash Flow of $43 million

SAN JOSE, Calif.- -(BUSINESS WIRE)- -Sept. 6, 2007- -VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended July 31,2007.

Net revenues, for the three months ended July 31, 2007, were $231.9 million, 57% higher than the net revenues of $147.6 million for the comparable period of 2006. Net revenues from VeriFone's International business increased 106% while net revenues from VeriFone's North America business increased 22%. The significant increase in net revenues was driven largely by the acquisition of Lipman Electronic Engineering Ltd., which closed November 1, 2006. Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.2%, for the three months ended July 31, 2007, compared to 45.9% for the comparable period of 2006. GAAP gross margins for the three months ended July 31, 2007, declined to 44.0% from 45.0% for the three months ended July 31, 2006, primarily as a result of increased amortization of purchased technology assets. GAAP operating expenses for the three months ended July 31, 2007 were $65.5 million compared to $38.0 million for the comparable period of 2006. This increase was primarily due to the Lipman acquisition and related integration expenses.

EBITDA, as adjusted, margins for the three months ended July 31, 2007, expanded for the twelfth consecutive quarter and reached a record level of 27.3%, compared to the 22.6% recorded in the three months ended July 31, 2006.

GAAP EPS for the three months ended July 31, 2007, was $0.16 per diluted share, compared to $0.24 per diluted share, for the comparable period of fiscal 2006. This decline resulted from acquisition related non-cash charges, higher stock-based compensation expense and a higher GAAP tax rate driven by an

increase in the valuation allowance related to the Lipman acquisition. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended July 31, 2007, increased 50% to $0.42 per diluted share, compared to $0.28 per diluted share, for the comparable period in 2006.

29. On September 7, 2007, defendants filed with the SEC the Company's financial results for the quarter ended July 31, 2007 pursuant to Form 10-Q, signed by defendants Bergeron and Zwarenstein ("3Q07 Form 10-Q"). The 3Q07 Form 10-Q contained many of the same materially false and misleading statements as defendants had made previously relating to the financial and operational performance of the Company. The 3Q07 Form 10-Q also contained certifications signed by defendants Bergeron and Zwarenstein which were virtually identical to those filed in the previous quarters and reproduced above. In addition, the 3Q07 Form 10-Q stated, in pertinent part, as follows:

*Unaudited Interim Financial Information*

The accompanying condensed consolidated balance sheet as of July 31, 2007, the condensed consolidated statements of operations for the three and nine months ended July 31, 2007 and 2006, and the condensed consolidated statements of cash flows for the nine months ended July 31, 2007 and 2006 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information and Form 10-Q and Article 10 of Regulation S-x. In the opinion of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of July 31, 2007 and its results of operations for the three and nine months ended July 31, 2007 and 2006, and cash flows for the nine months ended July 31, 2007 and 2006.

* * *

*Inventories*

Inventories are stated at the lower of standard cost or market. Standard costs approximate the first-in, first-out ("FIFO") method. The Company regularly monitors inventory quantities on hand and records write-downs for excess and obsolete inventories based primarily on the Company's estimated forecast of product demand and production requirements. Such write-downs establish a new cost-basis of accounting for the related inventory. Actual inventory losses may differ from management's estimates.

* * *

*Segment Information*

The Company is primarily structured in a geographic manner. The Company's Chief Executive Officer has been identified as the Chief Operating Decision Maker ("CODM") as defined by SFAS No. 131, *Disclosures About Segments of an Enterprise and Related Information.* The CODM reviews consolidated financial information on revenues and gross profit percentage for System Solutions and Services. The CODM also reviews operating expenses, certain of which are allocated to the Company's two segments described below.

The Company operates in two business segments: 1) North America and 2) International. The Company defines North America as the United States and Canada, and International as the countries in which it makes sales outside the United States and Canada.

Net revenues and operating income of each business segment reflect net revenues generated within the segment, standard cost of System Solutions net revenues, actual cost of Services net revenues and expenses that directly benefit only that segment. Corporate revenues and operating income reflect amortization of intangible assets, stock-based compensation, in-process research and development expense, and amortization of the step-up in the fair value of inventories, equipment and improvements and deferred revenue resulting from acquisitions. Corporate income also reflects the difference between the actual and standard cost of System Solutions net revenues and shared operating costs that benefit both segments, predominately research and development expenses and centralized supply chain management.

30. The statements set forth above were each materially false and misleading when made, and were known by defendants to be false or were deliberately disregarded as such thereby. At all times during the Class Period, defendants had manipulated VeriFone's revenue and earnings reporting, in violation of GAAP, by improperly valuing in-transit inventory and

allocating manufacturing and distribution overhead to inventory. In doing so, defendants materially overstated VeriFone's inventories and understated VeriFone's cost of net revenues. At all times during the Class Period the VeriFone's financial results were inaccurate and inherently unreliable.

THE TRUE FINANCIAL AND OPERATIONAL CONDITION OF VERIFONE IS DISCLOSED

31. On December 3, 2007, defendants issued a release over *Business Wire* stating that the Company had concluded that its financial statements for the first three quarters of fiscal year 2007 would be restated and should no longer be relied upon, as follows:

> VeriFone Announces Anticipated Restatement of 2007 Quarterly Financial Statements
>
> Also Announces Preliminary Fourth Quarter 2007 Revenue Results and Delays
>
> Announcement of Fourth Quarter 2007 Financial Results
>
> SAN JOSE, Calif.- -(BUSINESS WIRE)- -Dec. 3, 2007- -VeriFone Holdings, Inc. (NYSE:PAY) today announced that following a review by and on the recommendation of management, it has concluded that its unaudited interim consolidated financial statements for the three months ended January 31, 2007, the three and six months ended April 30, 2007, and the three and nine months ended July 31, 2007, should no longer be relied upon, principally due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution overhead to inventory, each of which affects VeriFone's reported costs of net revenues. The restatements are anticipated to correct errors that overstated previously reported inventories in material amounts as of January 31, 2007, April 30, 2007, and July 31, 2007, and understated cost of net revenues in material amounts for the three month periods ended January 31, 2007, April 30, 2007, and July 31, 2007. Accordingly, investors are cautioned not to rely on VeriFone's historical financial statements and earnings press releases and similar communications for the periods ended January 31, 2007, April 30, 2007, and July 31, 2007.
>
> Based on its review to date, management currently anticipates that the restatement will result in reductions to previously reported inventories of approximately $7.7

> million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007, and July 31, 2007, respectively, and reductions to previously reported pre tax income of approximately $8.9 million, $7.0 million and $13.8 million for the three month periods ended January 31, 2007, April 30, 2007, and July 31, 2007, respectively. VeriFone is currently evaluating the anticipated effect of the restatement on after-tax income for those periods.
>
> These estimates include corrections of other unrelated errors detected in the course of VeriFone's review to date, are based on currently available information and are subject to change during the course of the company's restatement process. While VeriFone is not currently aware of other accounting errors requiring adjustment to any prior period financial statements, there can be no assurances that VeriFone or its independent registered public accounting firm will not find additional accounting errors requiring further adjustments in those or earlier periods.
>
> * * *
>
> VeriFone concluded that a restatement of its interim unaudited financial statements is required as a result of an internal review of in-transit inventory balances conducted in preparation for VeriFone's fiscal 2007 audit. In reaching the conclusion to restate its financial results, VeriFone's management and the Audit Committee discussed the matters described in this press release with VeriFone's independent registered public accounting firm. Upon completion of its assessment of these errors, VeriFone intends to file amended Quarterly Reports on Form 10-Q for the periods described above that will restate the previously issued financial statements included therein. VeriFone currently estimates that it will file these amended quarterly reports, together with its Annual Report on Form 10 K for the fiscal year ended October 31, 2007, in January 2008. However, VeriFone cannot be certain how much time will ultimately be required for it to complete the restatement process.

32. Following the publication of this release, which indicated that defendants had overstated previously reported inventories and understated cost of net revenues in material amounts, shares of VeriFone plummeted, falling over 45% in the single trading day-or $22 per share-to close at $26.03, on huge trading volume of over 49 million shares or nearly 35 times its average trading volume. Wedbush Morgan analyst Gil Luria called VeriFone's announcement "pretty severe," noting that VeriFone made no assurances that the Company, or its outside accountants, would not find more mistakes in its financial reporting. Tien-tsin Huang, an analyst

at JPMorgan Securities also commented, "The restatement calls into question VeriFone's gross margins, which up until now have been positive fuel for the stock."

33. The market for VeriFone's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, VeriFone common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired VeriFone securities relying upon the integrity of the market price of VeriFone securities and market information relating to VeriFone, and have been damaged thereby.

34. During the Class Period, defendants materially misled the investing public, thereby inflating the price of VeriFone common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

35. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about VeriFone's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of VeriFone and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members

of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

ADDITIONAL SCIENTER ALLEGATIONS

36. As alleged herein, defendants acted with scienter in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding VeriFone, their control over, and/or receipt and/or modification of VeriFone's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning VeriFone, participated in the fraudulent scheme alleged herein.

37. In addition, throughout the Class Period, while in possession of material adverse non-public information, defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company in order to raise *over* $62.9 *million* in total proceeds from the sales of VeriFone's securities. These insider sales are set forth below:

Douglas G. Bergeron

| Transaction Date | Shares Sold | Share Price | Proceeds |
|---|---|---|---|
| 3/15/2007 | 19,700 | 36.10 | $714,519 |
| 3/15/2007 | 69,613 | 35.92 | $2,512,681 |
| 3/15/2007 | 110,687 | 35.83 | $3,975,401 |
| 4/11/2007 | 24,000 | 37.50 | $907,243 |
| 5/10/2007 | 21,671 | 38.07 | $830,866 |
| 5/10/2007 | 28,164 | 37.97 | $1,072,204 |
| 5/10/2007 | 47,600 | 37.78 | $1,806,896 |
| 5/14/2007 | 88,100 | 37.78 | $3,346,919 |

| | | | |
|---|---|---|---|
| 6/12/2007 | 63,800 | 32.65 | $2,096,468 |
| 6/12/2007 | 40,100 | 32.43 | $1,308,864 |
| 6/12/2007 | 46,100 | 32.87 | $1,525,910 |
| 7/12/2007 | 47,950 | 36.61 | $1,767,437 |
| 7/12/2007 | 37,300 | 36.87 | $1,380,100 |
| 7/12/2007 | 71,450 | 36.49 | $2,615,070 |
| 7/12/2007 | 43,300 | 36.31 | $1,579,584 |
| 8/10/2007 | 83,700 | 39.05 | $3,276,855 |
| 9/10/2007 | 31,200 | 39.18 | $1,228,968 |
| 9/10/2007 | 86,300 | 38.73 | $3,358,796 |
| 9/10/2007 | 82,500 | 38.93 | $3,231,525 |
| 10/10/2007 | 69,700 | 45.73 | $3,208,291 |
| 10/10/2007 | 43,200 | 45.13 | $1,965,168 |
| 10/10/2007 | 17,300 | 46.04 | $805,488 |
| 10/10/2007 | 3,300 | 45.67 | $150,711 |
| 10/10/2007 | 66,500 | 45.50 | $3,040,526 |
| 11/14/2007 | 41,398 | 44.95 | $1,872,432 |
| 11/14/2007 | 47,197 | 44.70 | $2,121,222 |
| 11/14/2007 | 28,682 | 45.25 | $1,305,031 |
| 11/14/2007 | 4,925 | 45.81 | $226,304 |
| 11/14/2007 | 18,293 | 45.51 | $837,819 |
| 11/19/2007 | 14,405 | 44.70 | $647,217 |
| 11/26/2007 | 4,100 | 46.06 | $190,363 |
| 11/26/2007 | 6,800 | 45.59 | $313,140 |
| 11/26/07 | 12,500 | 45.11 | $569,750 |
| 11/26/2007 | 19,900 | 44.49 | $897,490 |
| TOTAL SHARES SOLD: | 1,441,435 | TOTAL PROCEEDS: | $56,687,258 |

Barry Zwarenstein

| Transaction Date | Shares Sold | Share Price | Proceeds |
|---|---|---|---|
| 3/15/2007 | 12,600 | 35.75 | $453,348 |
| 3/15/2007 | 400 | 36.00 | $195,588 |
| 4/10/2007 | 12,215 | 37.87 | $464,659 |
| 4/10/2007 | 5,785 | 37.48 | $219,090 |
| 5/8/2007 | 8,200 | 37.14 | $308,148 |
| 5/8/2007 | 700 | 37.58 | $367,436 |
| 6/12/2007 | 6,300 | 32.88 | $207,900 |
| 6/12/2007 | 11,700 | 32.50 | $384,684 |
| 7/10/2007 | 8,200 | 36.07 | $298,152 |
| 7/10/2007 | 800 | 36.37 | $360,248 |
| 8/14/2007 | 700 | 36.79 | $363,944 |

| | | | |
|---|---|---|---|
| 8/14/2007 | 8,300 | 36.35 | $305,274 |
| 9/11/2007 | 9,000 | 39.81 | $359,892 |
| 9/11/2007 | 9,000 | 39.00 | $358,281 |
| 10/9/2007 | 3,700 | 45.01 | $169,190 |
| 10/9/2007 | 4,800 | 44.72 | $216,043 |
| 10/9/2007 | 5,100 | 44.08 | $228,021 |
| 10/9/2007 | 4,400 | 43.45 | $200,244 |
| 11/13/2007 | 9,222 | 44.38 | $422,829 |
| 11/13/2007 | 8,778 | 43.53 | $389,480 |
| TOTAL SHARES SOLD: | 161,900 | TOTAL PROCEEDS: | $6,272,450 |

APPLICABILITY OF PRESUMPTION OF RELIANCE:
FRAUD-ON-THE-MARKET DOCTRINE

38. At all relevant times, the market for VeriFone's securities was an efficient market for the following reasons, among others:

(a) VeriFone's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, VeriFone filed periodic public reports with the SEC and the NYSE;

(c) VeriFone regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services, and

(d) VeriFone was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publically available and entered the public marketplace.

39. As a result of the foregoing, the market for VeriFone securities promptly digested current information regarding VeriFone from all publicly available sources and reflected such information in VeriFone stock price. Under these circumstances, all purchasers of VeriFone securities during the Class Period suffered similar injury through their purchase of VeriFone securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

40. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements placed in this complaint. Many of the specific statements pleaded herein where not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of VeriFone who knew that those statements were false when made.

## LOSS CAUSATIONIECONOMIC LOSS

41. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of VeriFone securities and operated as a fraud or deceit on purchasers of VeriFone securities by

misrepresenting the Company's operating condition, financial results and business prospects. Defendants achieved this by making positive statements about VeriFone's business while they knew that the Company was suffering from a variety of adverse factors which were then negatively impacting its financial results, as detailed herein. Later, however, when VeriFone's prior misrepresentations were disclosed and became apparent to the market, the price of VeriFone securities fell precipitously as the prior artificial inflation came out of VeriFone's share price. As a result of their purchases of VeriFone publicly traded securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.,* damages under the federal securities laws.

42. The decline in VeriFone's share price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of VeriFone's share price declines negate any inference that the loss suffered by plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to defendants' fraudulent conduct.

## BASIS OF ALLEGATIONS

43. Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by VeriFone, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## FIRST CLAIM

Violation Of Section 10(b) Of
The Exchange Act And Rule 10b-5
Promulgated Thereunder Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investigating public; including plaintiff and other Class members, as alleged herein; (ii) enable the Individual Defendants to sell more than $62.9 million of their personally-held VeriFone common stock to the unsuspecting public; and (iii) cause plaintiff and other members of the Class to purchase VeriFone securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

46. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for VeriFone's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business, operations and prospects of VeriFone as specified herein.

48. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of VeriFone's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about VeriFone and its business operations and prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of VeriFone securities during the Class Period.

49. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

was aware of the Company's dissemination of information to the investing public which they knew or deliberately disregarded was materially false and misleading.

50. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain and to disclose such facts. Such defendants' material misrepresentations and/or omissions were done knowingly or deliberately and for the purpose and effect of concealing VeriFone's operating condition and business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were deliberate in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of VeriFone securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of VeriFone's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or deliberately disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired VeriFone securities during the Class Period at artificially high prices and were damaged thereby.

52. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the

other members of the Class and the marketplace known the truth regarding the problems that VeriFone was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their VeriFone securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of The Exchange Act Against Individual Defendants

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of VeriFone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were

provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, VeriFone and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D. Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder; and

E. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

12/7/07
Date

Respectfully submitted,

By: [signature]

Irwin B. Levin
David J. Cutshaw
Eric S. Pavlack
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
317-636-6481
317-636-2593 (fax)

**Counsel for the Plaintiff and Proposed Class**

**PLAINTIFF'S CERTIFICATION**

I, Mr. Peter A. Kraft ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the Complaint and authorized the commencement of an action on Plaintiff's behalf.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in purchase of securities during the Class Period specified in the Complaint are as follows:

| Date | No. of Shares Purchased | No. of Shares Sold | Price |
|---|---|---|---|
| 6/13/07 | 100 | -0- | $35.57 |

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a Class in an action filed under the federal securities laws.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the Class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7 day of December, 2007.

Sign Name: [signature]
Print Name: Peter A. Kraft
Address: 617 Brompton Court
Noblesville, IN 46060
County: Hamilton